UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SYSTEMS 4, INCORPORATED,
            *Plaintiff-Appellant,*

v.

LANDIS & GYR, INCORPORATED,
            *Defendant-Appellee.*

No. 00-1987

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Catherine C. Blake, District Judge.
(CA-97-2117-CCB)

Argued: April 5, 2001

Decided: April 30, 2001

Before WILKINSON, Chief Judge, MOTZ, Circuit Judge, and
Patrick Michael DUFFY, United States District Judge for the
District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Lenard Barrett Boss, ASBILL, JUNKIN, MOFFIT &
BOSS, Washington, D.C., for Appellant. Jan Feldman, CAHILL,
CHRISTIAN & KUNKLE, LTD., Chicago, Illinois, for Appellee. **ON
BRIEF:** Timothy D. Junkin, ASBILL, JUNKIN, MOFFIT & BOSS,
Washington, D.C., for Appellant. Robert E. Scott, Jr., Thomas V.
McCarron, SEMMES, BOWEN & SEMMES, Baltimore, Maryland,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Systems 4 appeals from the district court's grant of summary judgment in Systems 4's suit against Landis & Gyr under the Maryland Uniform Trade Secrets Act (MUPTA), Md. Code Ann., Comm. Law § 11-1201 *et seq.* (1990). For the following reasons, we affirm.

I.

Systems 4 is a Maryland corporation in the business of engineering and installing building automation systems to control heating, ventilation, air conditioning, lighting and access systems to improve efficiency in the operation and maintenance of buildings. Systems 4 also offers facilities management contracts under which it manages a facility for the facility's owner. Systems 4 often bids on this work under performance specification contracts.

Landis & Gyr, now known as Siemens Building Technologies, is the U.S. subsidiary of a foreign corporation and is in the business of designing, manufacturing, installing and servicing digital controls for regulating heating, ventilation and air conditioning systems in buildings, as well as controls for regulating building access, safety, lighting, and security.

In 1993, the National Gallery of Art in Washington D.C. solicited proposals for a new building automation system and performance specification contract. The solicitation required bidders to submit a great deal of specific information, such as a technical proposal that fully explained and documented the proposed automation techniques and processes. The National Gallery emphasized that the proposals should clearly define the "approach that will be used to meet the requirements of this contract" and stated that the "technical approach should be specific, detailed and clearly demonstrate the offeror's

understanding of the requirements and inherent problems associated with the objectives of this procurement." Consequently, a proposal submitted to the National Gallery pursuant to this solicitation was likely to contain confidential and proprietary information. Perhaps for this reason, the National Gallery announced at a pre-bid meeting that the solicitation would be closed, meaning that bidders would not be permitted to review one another's proposals. Systems 4 contends that the National Gallery also promised to keep the proposals confidential, but Systems 4's proposal was not stamped "Confidential," nor did it bear any other marks indicating that it was not for public consumption.

Both Systems 4 and Landis submitted proposals to the National Gallery. Systems 4 asserts that its proposal contained a number of trade secrets, including the manner in which the proposal itself was presented, the unique installation and scheduling techniques the company had developed in order to "phase in" the building automation system on a module-by-module basis, customized software architectural system design and Systems 4's client, reference, and project list. In the spring of 1994, Systems 4's proposal was selected as one of the finalists, meaning it was given an opportunity to submit a "best and final" offer. Landis's proposal was not so selected.

In July 1995, the National Gallery announced that it was withdrawing its solicitation and would reissue the solicitation after making revisions. Bidders were told that they could come and pick up their original proposals. On July 13, Scott Wallick, a sales engineer for Landis who was responsible for preparing Landis's proposal to the National Gallery, arrived at the Gallery to pick up the proposal. A National Gallery employee, however, inadvertently gave Wallick Systems 4's proposal instead of Landis's. Wallick did not realize that he had Systems 4's proposal until he returned to his office and opened the box containing the proposal.[1]

---

[1]Systems 4 disputes this, arguing that the notebooks containing the proposal were oversized, so that the flaps of the box in which they were stored could not be closed, and, as a result, one could see instantly that the box contained Systems 4's proposal. In support of this contention, Mary Kirgan, the president of Systems 4, testified that when the box containing the proposal was given to her, after Wallick returned it to the National Gallery, the box was open and she could identify the proposal. Systems 4 has pointed to no evidence, however, that the proposal was in this same box when Wallick obtained it.

Wallick admitted that when he realized that he had been given Systems 4's proposal, he did not inform Systems 4 or the National Gallery. Rather, Wallick "thumbed through" the proposal. He asserted that he was not interested in the substance of the proposal, but rather how it was presented. Wallick also claimed that he did not expect the proposal to contain any trade secrets. Wallick stated that he then returned Systems 4's proposal to Landis's warehouse where it remained until it was returned to the National Gallery.

On July 26, 1995, Wallick attended a meeting at the National Gallery regarding the Gallery's second solicitation for proposals. During the meeting, a representative from the National Gallery asked Wallick if he had Systems 4's proposal and he acknowledged that he did. The following day, at the National Gallery's request, Wallick returned the proposal to the Gallery. After an investigation into the incident, the National Gallery decided to exclude Landis from competing in the second round of bidding on the contract because it was possible that Landis obtained a competitive advantage as a result of Wallick's viewing of Systems 4's proposal.

In June 1997, Systems 4 brought the instant action against Landis alleging misappropriation of trade secrets and unjust enrichment. Systems 4 sought damages for unjust enrichment and lost profits. In March 1998, Landis moved for summary judgment on the ground that Systems 4 could not demonstrate any actual use of its trade secrets by Landis and no actual injury. In September 1998, Systems 4 filed a motion to compel discovery, which sought *inter alia* Landis's development and strategy plans, all negotiated documents, proposals, and drafts thereof, that Landis had produced since 1995, information about Landis's revenues and commissions, all documents showing market share for all of Landis's competitors, and all marketing and strategy documents produced since 1993. Landis asserted that these requests were overly broad and burdensome and that Systems 4 had failed to prove its need for these documents.

The district court granted in part and denied in part Landis's motion for summary judgment. *See Systems 4, Inc. v. Landis & Gyr, Inc.*, Civ. No. CCB 97-2117 (D. Md. March 31, 1999). The district court concluded that, as Systems 4 had not competed with Landis directly since the National Gallery solicitation, the only damages Sys-

tems 4 could seek were those for unjust enrichment, or a reasonable royalty, not lost profits. *Id.* at 3. As to Systems 4's motion to compel, the district court granted it in part and denied it in part, requiring Landis to produce proposals submitted to companies in the Washington D.C. metropolitan area from July 1995 to December 1997 in which Landis sought a contract as an energy services company or was hired to design energy controls systems. *See id.* at 5-8.

In February 2000, Landis filed its second motion for summary judgment, arguing that Systems 4 had failed to show that Landis had used any of its alleged trade secrets. The district court granted Landis's motion, holding that any similarities between Systems 4's National Gallery proposal and subsequent Landis proposals were "minor," meaning that "no reasonable juror could find that Landis has used a Systems 4 trade secret." *Systems 4, Inc. v. Landis & Gyr, Inc.*, Civ. No. CCB 97-2117, at 5 (D. Md. June 26, 2000). Systems 4 now appeals the district court's summary judgment ruling and its denial of Systems 4's discovery motions.

## II.

We have reviewed the record, the briefs, the applicable law and considered the parties' oral arguments and we are persuaded that the district court reached the correct result. We therefore affirm the district court's holding that there was no evidence that Landis used any of the trade secrets contained in Systems 4's National Gallery proposal. *See Systems 4, Inc. v. Landis & Gyr, Inc.*, Civ. No. CCB 97-2117 (D. Md. June 26, 2000).[2]

Systems 4 claims that, under the Maryland Uniform Trade Secrets Act (MUTSA), it can prevail on its misappropriation claim, regardless of whether Landis actually used its trade secrets, if the trade secrets were acquired through "improper means." *See Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 664 (4th Cir. 1993). MUTSA defines misappropriation of trade secrets as: "(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the

---

[2]The district court assumed for the purposes of summary judgment that Systems 4's proposal contained trade secrets. For the purposes of this appeal, we too assume that the proposal contained trade secrets.

trade secret was acquired by improper means; or (2) Disclosure or use of a trade secret of another without express or implied consent . . . ." Md. Code Ann., Comm. Law § 11-1201(c). Thus, a plaintiff can state a claim for misappropriation simply by demonstrating that the defendant acquired its trade secret by improper means, even if the plaintiff cannot show use of that trade secret. *See, e.g.*, *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 750 (2d Cir. 1998) ("Thus, a violation of [the Connecticut Uniform Trade Secrets Act] occurs if the defendant *either* wrongfully acquired plaintiff's trade secret *or* used or disclosed the trade secret.") (emphasis added); *Smithfield Ham and Prods. Co. v. Portion Pac, Inc.*, 905 F. Supp. 346, 350 (E.D. Va. 1995).

If Systems 4 could demonstrate that Wallick acquired its proposal through improper means, it would be entitled to proceed on its misappropriation claim regardless of whether Landis actually used any of the trade secrets contained in the proposal. However, Systems 4 has not forecast evidence sufficient to support a finding that Wallick acquired the proposal through improper means.

MUTSA defines "improper means" as including "theft, bribery, misrepresentation, breach or inducement of breach of a duty to maintain secrecy, or espionage through electronic or other means." Md. Code Ann., Comm. Law § 11-1201(b). To be sure, this list is not exhaustive. *See Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997); *E.I. duPont deNemours & Co. v. Christopher*, 431 F.2d 1012, 1016 (5th Cir. 1970) ("A complete catalogue of improper means is not possible. In general, they are means which fall below the generally accepted standards of commercial morality and reasonable conduct."). But from this list, one can derive some common characteristics of improper means. All of the examples listed in the MUTSA constitute intentional conduct involving some sort of stealth, deception or trickery. *Cf. Hurst v. Hughes Tool Co.*, 634 F.2d 895, 897 (5th Cir. 1981) (asking questions of an inventor and requesting a prototype of his invention does not constitute stealth or other improper means).

In this case, Systems 4 points to no evidence that Wallick intentionally acquired Systems 4's proposal, using deception, trickery or any other dishonest means. Wallick affirmed that he was given the box containing Systems 4's proposal by a National Gallery employee,

and that, when he received the box, it was closed so that he could not see the proposal contained therein. Wallick did not realize that the box did not contain the Landis proposal until he opened the box in his office. Thus, Wallick took possession of Systems 4's proposal inadvertently, without use of deception, trickery or stealth. While Wallick probably should not have looked at the proposal once he realized it was not his company's, merely looking at information acquired inadvertently does not constitute improper means. This is particularly true in light of the fact that the proposal did not bear any marks indicating that its contents were confidential. In these circumstances, we cannot conclude that Landis acquired the proposal through "improper means" for purposes of the MUTSA. As a result, to prevail on its misappropriation claim, Systems 4 was required to demonstrate use of its trade secrets by Landis. This Systems 4 failed to do, and therefore, the district court's grant of summary judgment in favor of Landis must be affirmed.[3]

*AFFIRMED*

---

[3]Systems 4 also argues that the district court erred in denying Systems 4's Motion to Compel, and thereby limiting the discovery which Systems 4 could seek. We have reviewed the record and conclude that the district court did not abuse its discretion nor was Systems 4 unfairly prejudiced by the district court's discovery rulings.